UNITED STATES

v.

Staff Sergeant John T. BALDWIN,
United States Air Force.

Misc. Dkt. No. 2000–02 (recon).

U.S. Air Force Court of Criminal Appeals.

26 Sept. 2000.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major Bryan T. Wheeler, and Major Mitchel Neurock.

Appellate Counsel for Appellee: Colonel Jeanne M. Rueth, Lieutenant Colonel James R. Wise, Major Stephen P. Kelly, and Major Thomas R. Uiselt.

*En Banc* YOUNG, Chief Judge, SPISAK, Senior Judge, SCHLEGEL, Senior Judge, STARR, BURD, ROBERTS, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT UPON RECONSIDERATION

SCHLEGEL, Senior Judge:

The accused is charged with one specification of committing indecent acts, on divers occasions, with his 7–year–old stepdaughter, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was arraigned on 9 February 2000. Prior to entering pleas, the accused moved to suppress a written confession he gave to investigators, claiming there was insufficient corroboration. After receiving evidence on the motion and hearing argument, the military judge granted the motion. The United States filed timely written notice of appeal of the military judge's ruling pursuant to Article 62(a)(2), UCMJ, 10 U.S.C. § 862(a)(2). *See* Rule for Courts–Martial 908(b); Courts of Criminal Appeals Rules of Practice and Procedure 21(d), 44 M.J. LXXI-II (1996). We affirmed the ruling by the military judge. *United States v. Baldwin,* 53 M.J. 676 (A.F.Ct.Crim.App.2000). Subsequently, we granted the government's motion for en banc reconsideration on 13 July 2000. We now overrule our prior published decision and find the military judge erroneously suppressed the accused's confession.

### Background

After turning himself in to agents of the Air Force Office of Special Investigations (AFOSI) on 29 April 1999, the accused gave them a detailed handwritten confession. It provided the motivation (30 days of marital and sexual problems and the fact he had seen the victim's genitals one night while checking on her); the when (weekends in April 1999, on approximately 6 occasions); the how (touched her genitals and sometimes masturbated but never penetrated her or touched her with his penis); why he stopped (his wife discovered him on 24 April 1999); and finally, what happened (he went to a chaplain then to a therapist, and moved out of the house).

To corroborate the confession, the prosecution called two witnesses and submitted a stipulation of expected testimony. The accused's wife said they were having problems in their marriage, including their sex life. She testified that on a weekend near the end of April 1999, she found the accused in the child-victim's bedroom covering her with blankets. When she entered, he gave her a look she had never seen before and then left. When she found him on the floor in the living room crying, she knew something was terribly wrong. She testified that after arguing with the accused, the child-victim slept with her that night and the next. She also testified the accused voluntarily left the marital home and moved into the dormitory. Finally, she said the accused went to a chaplain and then to see a man named Mr. Cox.

The accused's mother testified he called her near the end of April 1999, and admitted he molested the child-victim. She also said that while talking with her, he outlined his plan to see a chaplain, find a counselor, turn himself in, and move out of his house.

The stipulation of expected testimony was from Doctor James Cox. It indicated the accused became his patient on 28 April 1999, after being referred to him by an Air Force chaplain. It also stated he was treating the accused for "problems relating" with his stepdaughter.

During argument on the accused's motion, the military judge asked trial counsel,

> MJ: Okay. Let me ask you this, back in law school the common law rule concerning this was that before an admission or confession is admissible the prosecution has to prove *corpus delicti.* That is, that there was a crime committed. That is, a person can't confess to something where there's no evidence that there was a crime committed. Okay.
>
> For instance, defendant one goes into the police and confesses that he killed somebody last year on the side of the road. There's no other evidence indicating that anybody's missing, anybody's dead, you know, anything to indicate that what he's saying is correct. Now, of course there are people that can testify that from time to time there are people on the side of the road, but that's all.
>
> My question is, can the prosecution prosecute defendant one for murder where there's no indication whatsoever of *corpus delicti?* Part B of that is, what evidence do we have in this case that there is any *corpus delicti* and, Part C is, what case do you have to support your legal position where there was no evidence presented by the prosecution of a *corpus delicti?*

Trial counsel responded that proof of the corpus delicti was not required. Thereafter, the military judge entered his findings of fact, which included the following paragraph.

> At no time did the alleged child victim ever complain of any abuse, molestation or unwelcome touching. At no time was the accused ever seen improperly touching the child. At no time did the prosecution pres-

ent any physical evidence of molestation. At no time did the prosecution present any circumstantial evidence that a touching had even occurred. At no time did the prosecution present any evidence of unusual behavior on the part of the alleged child victim. At no time did the prosecution present any expert testimony that would suggest that any facts of this case is [sic] consistent with child abuse or molestation.

In his conclusions of law, after citing language from Mil.R.Evid. 304(g), the military judge stated,

> Although the law does not require independent evidence of the, *"corpus delicti,"* to corroborate the confession or admission, this court finds that the lack of *corpus delicti* is a factor that may be considered in determining if the government has presented evidence that establishes an inference of truth as to the "essential facts admitted" in the confession.

Then, relying on *United States v. Faciane,* 40 M.J. 399 (C.M.A.1994), the military judge suppressed the accused's confession.

## Analysis

■ On the suppression of a confession, we review a military judge's factual findings under a clearly erroneous standard, and his legal conclusion concerning corroboration de novo. *United States v. Ayala,* 43 M.J. 296, 298 (1995). *Accord United States v. Young,* 49 M.J. 265, 266–67 (1998). We may not find additional facts or substitute our interpretation of the facts for those of the military judge. Article 62, UCMJ, 10 U.S.C. § 862. "On questions of fact, [we ask] whether the decision is *reasonable;* on questions of law, [we ask] whether the decision is *correct."* 2 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 7.05 (3d ed.1999).

■ For a variety of reasons, our country's system of criminal justice has always insisted that before an accused's confession can be used as the sole basis for a conviction of a crime, some independent evidence must corroborate it. *See Escobedo v. Illinois,* 378 U.S. 478, 488–89, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Smith v. United States,* 348 U.S. 147, 152–53, 75 S.Ct. 194, 99 L.Ed. 192

(1954); *Warszower v. United States,* 312 U.S. 342, 347, 61 S.Ct. 603, 85 L.Ed. 876 (1941). Historically, this inquiry has involved two competing theories: independent proof of the corpus delicti or independent evidence establishing the truthfulness of the statement. 1 John W. Strong et al., *McCormick on Evidence* §§ 146–47 (5th ed.1999).

■■■ The Supreme Court held the independent evidence used to corroborate a confession "does not have to prove the offense beyond a reasonable doubt, or even by a preponderance...." *Smith,* 348 U.S. at 156, 75 S.Ct. 194. The corroboration requirement is satisfied if the independent evidence "merely fortifies the truth of the confession, without independently establishing the crime charged...." *Id.* Where the crime involves no tangible corpus delicti, "the corroborative evidence must implicate the accused in order to show that a crime has been committed." *Id.* at 154, 75 S.Ct. 194. Further in certain cases, "[a]dmissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated." *Id.* at n. 3. (citations omitted). In *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Court expressly rejected requiring proof of the corpus delicti as a condition precedent to the admissibility of confession or admission.

> [W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.

*But see Wong Sun v. United States,* 371 U.S. 471, 490 n. 15, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In the Armed Forces, we have a codified rule concerning the admissibility and use of confessions and admissions. Mil.R.Evid. 304. It provides that an admission or confession of an accused may only be considered as evidence against him if "independent evidence, either direct or *circumstantial,* has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth." Mil.R.Evid. 304(g). (emphasis added). It also provides that "[c]orroboration is not required ... for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions." This independent evidence "need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession." Mil.R.Evid. 304(g)(1). The evidence need raise only an inference of the truth of the essential facts admitted. The rule contains no reference whatsoever to the traditional corpus delicti doctrine.

■■■ Our superior court has consistently rejected efforts to interpret Mil.R.Evid. 304(g) as requiring independent proof of the corpus delicti and their guidance in the application of this rule has been clear.

> The corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the *corpus delicti* of the confessed offense. *See United States v. Maio,* 34 M.J. 215, 218 (C.M.A.1992). Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted. *Id.; United States v. Rounds,* 30 M.J. 76, 80 (C.M.A.1990). Moreover, while the reliability of the essential facts must be established, it need not be done beyond a reasonable doubt or by a preponderance of the evidence. *United States v. Maio, supra* at 218 n. 1; *see United States v. Melvin,* 26 M.J. 145, 146 (C.M.A.1988) (quantum of corroboration needed "very slight"); *United States v. Yeoman,* 25 M.J. 1, 4 (C.M.A.1987) (corroboration needed "slight").

*United States v. Cottrill,* 45 M.J. 485, 489 (1997).

Turning to the case sub judice, we first find that portions of the military judge's findings of fact are erroneous. The accused's wife never testified he told her he was "sorry" while in the living room. Although we agree with his finding that the accused "sought help" after the last incident of molestation, there is no evidence in the record that this occurred within two days of being discovered by his wife. Finally, the last para-

graph of "facts" is more properly characterized as the rationale for his conclusions of law.

■ We also find the military judge erred in interpreting and applying Mil. R.Evid. 304(g) when he found the lack of a corpus delicti as a "factor" in arriving at his conclusions of law. The existence of a corpus delicti is not required by the rule. Despite his acknowledgement that this was the law, the military judge's ruling was based upon the absence of any evidence that the accused was seen committing the acts or that the child-victim exhibited physical or mental injury. So, while eschewing the requirement, he virtually demanded that trial counsel present evidence of the body of the crime, the corpus delicti. *Black's Law Dictionary* 346 (7th ed.1999). Fortunately for the child-victim, there was no tangible injury because, as the accused duly noted in his confession, she never woke-up and he never penetrated her. This explains the absence of physical or mental injury and is precisely the reason the Supreme Court rejected the application of the corpus delicti rule in *Smith*.

The military judge should have concentrated on the requirements of the rule for independent, direct or circumstantial evidence, corroborating the essential facts admitted in the confession sufficiently to give rise to an inference of their truth. There is plenty of circumstantial evidence to corroborate appellant's confession. The testimony from the accused's wife corroborated his motivation for committing the indecent acts and the fact that the child-victim routinely tossed her covers aside. Her discovery of him on a weekend in April 1999, in the child-victim's room, covering the child-victim corroborates the timing of the acts. His look and flight from the room corroborates the accused's feelings of guilt and remorse. Her testimony about the decision to have the child-victim sleep with her and the accused's departure from the marital home corroborates his statement that his wife took the necessary steps to protect the child-victim from him. Finally, her verification the accused went to a chaplain and then to see a man named Mr. Cox also corroborates the confession.

In addition, the testimony of the accused's mother that he admitted molesting the little girl was certainly relevant on the question of the admissibility and truthfulness of the confession. First, the defense solicited this information from the accused's mother during cross-examination. Furthermore, in his written motion to suppress and oral argument to the military judge, appellant never argued this admission could not be used to corroborate the confession. This statement to his mother was admissible under Mil.R.Evid. 801(d)(2)(A). As such, it falls within the exception to the corroboration requirement found in Mil.R.Evid. 304(g) concerning statements that are "offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions." He also outlined his plan to see a chaplain, turn himself in, find a counselor, and move out of the house. This statement is admissible as a then existing mental, emotional, or physical condition under Mil.R.Evid. 803(3).

Finally, the stipulation of expected testimony from Doctor Cox that the accused became his patient on 28 April 1999, was referred from an Air Force chaplain, and was being treated for problems relating with his stepdaughter also gives rise to the inference that his confession is truthful. His admission about these "problems" with the child-victim are admissible without corroboration under Mil.R.Evid. 803(4).

■ Nevertheless, we believe there is more reason to find the confession was corroborated in this case because of the accused's nontestimonial acts. Mil.R.Evid. 404(b). Nontestimonial acts may be admissible to show an accused's consciousness of guilt. *United States v. Cook,* 48 M.J. 64, 66 (1998); *United States v. Borland,* 12 M.J. 855 (A.F.C.M.R.1981). Wigmore characterizes guilty behavior as retrospectant evidence that can be used to infer guilt.

The commission of a crime leaves usually upon the consciousness a moral impression that is characteristic. The innocent man is without it; the guilty man usually has it. Its evidential value has never been doubted. The inference from consciousness of guilt to "guilty" is always available in evidence. It is a most powerful one, because

the only other hypothesis conceivable is the rare one that the person's consciousness is caused by a delusion, and not by the actual doing of the act.

2 John H. Wigmore, *Evidence in Trials at Common Law* § 173 (1983 ed.).

■ Because consciousness of guilt can be used as circumstantial evidence of guilt, we find it may also be used in evaluating whether a confession meets the test for corroboration under the rule.

The accused's nontestimonial acts include his flight from the child-victim's bedroom, emotional state in the living room immediately after, voluntary departure from the marital residence, seeking assistance from a chaplain, entering therapy, turning himself in to law enforcement authorities, and voluntarily confessing to the crimes. These are objective and tangible manifestations of the feelings of guilt and remorse the accused wrote about in his confession. As such, they help corroborate all the essential facts of the confession. Further, these acts, when combined with his admissions to third persons not involved in the investigation of these offenses—especially his mother, establish a strong inference as to the truthfulness of the accused's confession which pursuant to the dicta in *Smith* might exempt this confession from the requirement of corroboration in Federal district court. *See Kaneshiro v. United States*, 445 F.2d 1266, 1270 (9th Cir. 1971).

The military judge's reliance on *Faciane* as an oasis was also illusory because the real precedential value of that case involves Mil. R.Evid. 803(4), the medical treatment exception to the hearsay rule. After holding the military judge erred by admitting the statements of the child-victim to a child protective committee member under Mil.R.Evid. 803(4), our superior court also found there was insufficient corroboration based on the child's visitation with the appellant and her aberrant behavior to sustain the conviction based upon his confession. The court was unwilling "to attach a criminal connotation to the mere fact of a parental visit," nor draw any inference of corroboration from her behavior because she was the child "of recently divorced parents and a recently remarried mother." *Faciane*,

40 M.J. at 403. We reject any inference that *Faciane* stands for the proposition that an accused's presence at the scene or opportunity to commit an offense cannot be considered on the question of corroboration. Thankfully, we need not discuss the meaning of the child-victim's aberrant behavior in this case because there was none.

■ We find the accused's confession to be more than adequately corroborated under Mil.R.Evid. 304(g), overrule our previous decision, and reverse the military judge's ruling that it be suppressed. The case is returned to the military judge for proceedings in conformance with this opinion.

Senior Judge SPISAK, and Judges STARR, ROBERTS, and HEAD concur.

YOUNG, Chief Judge (concurring):

The dissent claims that this decision "sends a loud message that trial judges have very little, if any, discretion." That is just not the case. Military judges still have discretion, but they must apply the law correctly.

As Senior Judge Schlegel correctly notes, "[w]e review a military judge's ruling on a motion to suppress—like other decisions to admit or exclude evidence—for an abuse of discretion." *United States v. Ayala*, 43 M.J. 296, 298 (1995). But, the term "abuse of discretion" does not describe one standard. It "more accurately describes a *range* of appellate responses" to a trial court's decisions. 2 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 7.06 (3d ed.1999).

Appellate courts must first identify the issue before they can determine how to apply the abuse of discretion standard. For example, Mil.R.Evid. 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue waste of time, or needless presentation of cumulative evidence. Mil. R.Evid. 403 is only invoked if the evidence is otherwise admissible under the Military Rules of Evidence. We will not "overturn a

military judge's decision to admit evidence under Mil.R.Evid. 403 absent a clear abuse of discretion." *United States v. Miller*, 46 M.J. 63, 65 (1997). In reviewing the balancing of the probative value of the evidence against the danger of unfair prejudice, we give judges "enormous leeway" in deciding to admit or suppress. Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* 490 (4th ed.1999). *See United States v. Abel*, 469 U.S. 45, 54 (1984). Finding that a military judge abused his discretion in performing the balancing involves far more than a difference of opinion—the action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Miller*, 46 M.J. at 65 (quoting *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

When the issue is one of *admissibility* of evidence, the abuse of discretion standard is defined differently. "In reviewing a military judge's ruling on a motion to suppress, we review factfinding under the clearly-erroneous standard and conclusions of law under the de novo standard." *Ayala*, 43 M.J. at 298. Although we have authority to perform our own factfinding under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we normally defer to the military judge's findings of fact. Of course in a government appeal, such as this, we do not have factfinding powers. Article 62, UCMJ, 10 U.S.C § 862. However, the military judge gets no deference whatsoever on his conclusions of law.

In this case, we gave the military judge the appropriate deference on his findings of fact. We did not give the military judge deference on his conclusions of law because he is not entitled to any. His decision to suppress the confession because the prosecution failed to produce independent evidence that a crime was committed is based on an erroneous view of the law.

BURD, Judge (dissenting):

As I stated in my concurring opinion when this case was first decided, I am unwilling to conclude the military judge abused his discretion. *United States v. Baldwin*, 53 M.J. 676, 681–82 (A.F.Ct.Crim.App.2000) (Burd, J., concurring). I remain unwilling to find such abuse.

The lead opinion places great emphasis on the fact that the military judge made the mistake of uttering the words corpus delicti. I see nothing improper in considering concepts with roots that trace to the common law in judicial decision making at the trial level. Contemplation of historical underpinnings is not the exclusive province of appellate tribunals.

So often at the trial level, judges are called upon to make decisions at the moment or within a few minutes. They rarely ever have the luxury of virtual timelessness enjoyed by the appellate bench. After having read the lead opinion, one would think the military judge rendered a completely indefensible decision. He did not. He made a courageous and rational determination that a confession was inadmissible because there was insufficient independent evidence to corroborate the essential facts admitted in the confession. *See* Mil.R.Evid. 304(g). The issue is not whether I would have made the same decision. The majority today sends a loud message that trial judges have very little, if any, discretion. This is why I dissent.